## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **Ralph Blaine Smith** | : | |
| c/o 33 South Grant Avenue | : | |
| Columbus, Ohio 43215, | : | |
|     Plaintiff, | : | |
| | : | |
| vs. | : | Case No. |
| | : | |
| **David Silvernail** | : | Judge |
| 1311 Refugee Road | : | |
| Pickerington, Ohio 43147 | : | |
| | : | |
| **City of Pickerington, Ohio** | : | |
| Pickerington City Hall | : | |
| 100 Lockville Road | : | |
| Pickerington, Ohio 43147 | : | |
| | : | |
| **Gregg Marx** | : | |
| 301 Scott Drive | : | |
| Lancaster, Ohio 43130 | : | |
| | : | |
| **Fairfield County, Ohio** | : | |
| Fairfield County Commissioners Office | : | |
| 210 East Main Street, Room 301 | : | |
| Lancaster, Ohio 43130 | : | |
|     Defendants. | : | |

## <u>Complaint And Jury Demand</u>

1.  Plaintiff Ralph Blaine Smith brings this federal civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 and 1988 to obtain redress for, *inter alia*, defendants' false arrest, malicious prosecution, wrongful conviction and false imprisonment of plaintiff on charges of aggravated robbery, kidnapping and theft stemming from an alleged home invasion robbery which purportedly occurred in Pickerington, Ohio in early 2000. As the result of defendants' extensive concealment of exculpatory evidence, conspiracy to elicit false testimony and submission of perjured trial testimony at plaintiff's criminal trial, plaintiff was wrongfully convicted, sentenced

to 67 year term of imprisonment, and wrongfully imprisoned for more than 21 years of his life. Plaintiff's conviction was vacated in June of 2021, and in September of 2021 the Fairfield, County, Ohio Court of Common Pleas granted the Fairfield County Prosecutor's *nolle prosequi* application.

## Jurisdiction And Venue

2. This action is brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985 and 42 U.S.C. §1988 to obtain monetary redress for the defendants' deprivations, under color of state law, of rights secured to plaintiff by the Fourth, Fifth, Eighth and Fourteenth Amendments of the United States Constitution.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

4. Venue is proper under and pursuant to 28 U.S.C. §1391(b). All defendants are reside or are located within this jurisdictional district, and all of the events giving rise to this action occurred within this judicial district.

## Parties

5. Defendant David Silvernail is sued in both his personal and official capacities.

6. At all times material to this action, defendant Silvernail held the rank of Detective in the employ of the Police Department of defendant City of Pickerington, Ohio.

7. Defendant Silvernail personally investigated the alleged crimes with which plaintiff was falsely charged, and was the only Pickerington Police employee involved with the case following the initial Pickerington police response to the alleged robbery.

8. Defendant City of Pickerington is a municipal corporation organized under the laws of the State of Ohio and located wholly within Fairfield County, Ohio, within this judicial district.

9. Defendant Gregg Marx is sued in both his personal and official capacities.

10. During most of the events material to this action, defendant Marx was a senior Assistant Prosecuting Attorney in the employ of the Fairfield County, Ohio Prosecutor, and with respect to his involvement in the criminal case against plaintiff, was entirely unsupervised. Defendant Marx was subsequently appointed, then elected as the Fairfield County Prosecuting attorney, during which tenure he ratified his prior actions involving the plaintiff. With respect to all of the events described herein, defendant Marx was at all times defendant Fairfield County's sole decisionmaker and highest-ranking official.

11. Prior to obtaining plaintiff's indictment, defendant Marx also personally investigated the purported crimes with which plaintiff was falsely charged.

12. Defendant Fairfield County, Ohio is a county government organized under the laws of the State of Ohio.

**Facts Common To All Causes Of Action**

13. On the night of February 2, 2000, a twenty-four year old individual named Rudolph Valentino Stefanitsis, known as "Rudy," called 9-1-1 and reported that he and his family were the victims of a home invasion armed robbery. At the time, the Stefanitsis's family resided in a suburban house located at 332 Colony Park Drive, Pickerington, Ohio.

14. The Stefanitsises reported that around 10:30 on the night of February 2, 2000, Rudy Stefanitsis answered a knock at the front door of their house, and that upon opening the door, two unidentified, masked individuals forced their way into the house at gunpoint and immediately demanded that Rudy Stefanitsis take them to his safe.

15. The Stefanitsises described the alleged armed robbers as black males. One was described as being 5'9" tall; the other intruder was 6'0" to 6'1" tall and more darkly complected than the

3

shorter individual. Both alleged intruders wore hats or hoods and masks which concealed their faces below their eyes. The Stefanitsises stated that they did not recognize either robber, but that one of the robbers' masks briefly slipped somewhat down his face.

16. The Stefanitsises further reported that in response to the intruders' demands to be shown the safe, Rudy Stefanitsis replied that the safe was in the basement, and the Stefanitsises were then taken to the basement at gunpoint. Rudy Stefanitsis was ordered to open the safe, from which the intruders allegedly removed $11,000 to $12,000 of cash and an unspecified number of rare comic books worth over $4,000. The Stefanitsises also reported that the robbers took approximately $6,500 of jewelry and their cell phones from their persons and bedroom. The robbers reportedly spent 15 to 20 minutes searching for additional valuables, then allegedly restrained the Stefanitsises with electrical tape and departed with the stolen cash, comic books, jewelry and cell phones.

17. The Stefanitsises further reported that after the robbers left, Trisha Stefanitsis quickly escaped her bonds, then freed Rudy Stefanitsis, and they went with their children to a nearby relative's house, where Trisha Stefanitsis used a relative's cell phone to call the police.

18. The Stefanitsises also reported that very few people, all of whom were either friends or relatives, were aware that they kept a safe in their home.

19. Two on-duty Pickerington Police officers promptly responded to the Stefanitsises' residence. The officers initially observed that despite fresh snowfall on the ground, which should have shown the robbers' footprints and their vehicle's tire tracks, no footprints or tracks were present. They also observed that the inside of the Stefanitsises' house was largely undisturbed, notwithstanding the Stefanitsises' statements that the robbers spent significant time searching their house for valuables.

20. Immediately after Pickerington's initial 9-1-1 response, defendant Silvernail was placed in or otherwise assumed complete control of the investigation of the alleged robbery. Upon information and belief, defendant Silvernail was never trained as a detective. Nevertheless, his activities relevant to the alleged robbery were wholly unsupervised, and he was defendant City of Pickerington's chief policymaker with respect to all investigatory and arrest decisions of defendant City of Pickerington.

21. The Stefanitsises provided defendant Silvernail with the names of all individuals who did or might have knowledge of the existence of the Stefanitsises' safe. However, at that time neither the Stefanitsises nor the Pickerington Police identified any of those individuals as a suspect in the robbery. Rudy Stefanitsis's list of people with knowledge of Mr. Stefanitsis's safe included an individual named Dana Rowe. Trisha Stefanitsis omitted Dana Rowe's name from her initial list of people with knowledge of the safe, then added it after prompting from defendant Silvernail.

22. During early 2000 the Stefanitsises were social friends of two women, Tammy Bellar and her friend Mary Office. Shortly before the alleged robbery, Mary Office was involved in a romantic or physical relationship with plaintiff, which plaintiff ended in late 1999.

23. As the result of Mary Office's statement(s) that plaintiff might have been involved in the robbery, defendant Silvernail promptly concluded that plaintiff was one of the two robbers, or that he could in any event obtain plaintiff's conviction for the purported crime.

24. On February 3 and February 4, 2000 defendant Silvernail conducted lengthy, recorded interviews of the Stefanitsises and attempted to obtain detailed descriptions of the robbers' faces. However, on the video, neither could give more than vague descriptions of either robber, and their respective descriptions were contradictory. Neither could provide a satisfactory sketch of

either robber's face, they gave conflicting descriptions of the robbers' clothing, and Trisha Stefanitsis was unable even to describe the facemask worn by the robber whose mask allegedly slipped during the robbery, variously describing it as a hood, a scarf, the collar of his jacket, and, ultimately, a "toboggan." Nevertheless, on or after February 10, 2000, defendant Silvernail persuaded the Stefanitsises to identify plaintiff as one of the two robbers.

25. During defendant Silvernail's investigation, Trisha Stefanitsis told him of events preceding the robbery which she believed were related to the robbery. She stated that on the day before the robbery, she received two phone calls from individuals who stated that they were calling on behalf of the <u>Columbus Dispatch</u> newspaper, which calls she believed were not genuine and were attempts to obtain the Stefanitsises' residence address.

26. Trisha Stefanitsis further stated that on the morning of the robbery, she heard someone at her front door, which she did not answer, then saw a black Geo Tracker automobile with green lettering leaving her driveway. The Geo Tracker was occupied by two black males, and defendant Silvernail reported that when he asked Ms Stefanitsis if they appeared to be the two robbers, she responded **"Yeah, I know they were."**

27. Rudy Stefanitsis subsequently informed defendant Silvernail that he knew the identity of the owner of a black Geo Tracker vehicle with green lettering, and provided the relevant information. Defendant Silvernail's investigative reports indicate that he did not investigate the owner of the black Geo Tracker.

28. During an interview of Rudy Stefanitsis which defendant Silvernail conducted on February 4, 2000, Rudy Stefanitsis articulated his suspicion that Dana Rowe, nicknamed "BooBoo," was involved in the robbery. Later that day defendant Silvernail interviewed Dana

Rowe, who denied having any knowledge of or involvement in the robbery. Defendant Silvernail reported that Dana Rowe's hands were shaking during the entire interview.

29. Rudy Stefanitsis subsequently visited Dana Rowe for the purpose of resolving his suspicion that Dana Rowe was involved in the robbery. Following that meeting, Rudy Stefanitsis told defendant Silvernail that he was certain of Dana Rowe's involvement:

**"I know for sure he [Dana Rowe] had something to do with it now. I guarantee it, 100%."**

30. Despite Rudy Stefanitsis' certainty that Dana Rowe was involved in the robbery, defendant Silvernail made no further effort to investigate Dana Rowe.

31. Mary Office was a personal friend of Dana Rowe.

32. Defendant Marx also personally investigated the Stefanitsis' robbery claims before he sought plaintiff's indictment. His investigation included his March 6, 2000 in-person visit with and interview of the Stefanitsises at their Pickerington home.

33. At the time of the purported robbery, the Stafanitsises were experiencing serious financial problems which culminated in their filing of a petition in bankruptcy. Defendants apparently never investigated the Stefanitsises' financial circumstances.

34. On March 22, 2000 defendant Marx presented the inculpatory evidence against plaintiff, consisting solely of the Stefanitsises' "eyewitness" identifications of plaintiff, to a grand jury. Plaintiff was indicted on multiple charges, involving kidnapping, armed robbery and theft.

35. Immediately after the Stefanitsises testified to the grand jury, Rudy Stefanitsis, being uncertain of the truth or falsity of his grand jury testimony, asked defendant Silvernail to afford him and Trisha Stefanitsis the opportunity to actually look at plaintiff, whom they had never previously seen or met. Defendant Silvernail refused that request, and instead produced a single photograph of plaintiff on which plaintiff's name was conspicuously printed. The Stefanitsises

never saw plaintiff's face before they attended a defense motion hearing prior to plaintiff's criminal trial.

36. The entire case against plaintiff consisted of the Stefanitsises' "eyewitness" identifications of plaintiff as one of the two robbers. No fingerprint evidence, no DNA evidence, no confession, no cell phone location data, no conflicting statements of plaintiff, no jailhouse snitch testimony, and no other evidence, direct or circumstantial, was ever presented to the jury. Nor was any individual ever identified as the second alleged robber.

37. In addition to his investigative activities, defendant Marx prosecuted the entire case against plaintiff and was solely responsible for all decisionmaking which pertained to the case. Being wholly unsupervised, defendant Marx was defendant Fairfield County's chief policymaker with respect to the entire handling of the prosecution of plaintiff.

38. Plaintiff's criminal trial commenced on August 8, 2000. During the trial, defendant Marx repeatedly asked defendant Silvernail if his investigation of the Stefanitsis robbery yielded any suspects other than plaintiff, to which defendant Silvernail repeatedly testified in the negative:

> Q. [By defendant Marx] **Have you ever had any witness tell you that anyone other than the defendant committed the crime?**
> A. [By defendant Silvernail] **No, sir.**
> (Trial Tr. 320, 23-25.)
> Q. **So no one has ever accused anyone other than the defendant of this crime?**
> A. **Correct.**
> (Trial Tr. 321: 9-12)
> Q. **Throughout this case, have the witnesses that you have spoken to been consistent in naming the Defendant as Suspect No. 2?**
> A. **Yes, sir.**
> Q. **And they've never since identified anybody else?**
> A. **Negative.**
> (Trial Tr. 378: 4-11)

39. At the conclusion of the trial, the jury convicted plaintiff of two counts of aggravated robbery, two counts of kidnapping, and one count of theft. Plaintiff was sentenced to prison for a

term of 67 years, a virtual life sentence.  Only two living Ohio prison inmates are more than 91 years old.

40. Unbeknownst to plaintiff at any time prior to or during his criminal trial, the defendants completely rigged the outcome of the trial by withholding a wealth of exculpatory evidence from plaintiff and his counsel, and by knowingly conspiring to present and presenting the perjured testimony of defendant Silvernail in violation of established federal law, including the disclosure mandate of Brady v. Maryland, 373 U.S. 83 (1963), and progeny.

41. The exculpatory evidence which defendants deliberately or recklessly withheld from disclosure to plaintiff and his counsel includes a "narrative supplement" which was written by Pickerington Police Officer Gregory Annis, one of the two Pickerington police officers who first responded to the Stefanitsises' house following their 9-1-1 call. In that narrative supplement, Officer Annis expressed his overt skepticism that any crime occurred. Officer Annis stated, among other matters, that despite fresh snowfall, there were no footprints on the driveway or front porch of the Stefanitsis' house consistent with the robbers' prints, there were no tire tracks in the driveway consistent with the presence of the robbers' car, the house was generally undisturbed, despite the Stefanitsises' description of the alleged robbers' lengthy search of the house, the house was searched "too selectively for my taste," and the method of the robbers' purported forced entry indicated that they were familiar with the Stefanitsises and their house.

42. In addition to Officer Annis's report, the exculpatory evidence which the defendants deliberately and/or recklessly withheld from disclosure to plaintiff included defendant Silvernail's investigative summary. That summary disclosed, among other matters, **all** of the following:

9

(a) Mary Office was the source of defendants' identification of plaintiff as a suspect. Defendants' concealment of that information deprived plaintiff from asserting in his defense that his prosecution was instigated by an individual who was motivated to implicate him out of a desire for revenge, or for the purpose of shielding Dana Rowe from suspicion;

(b) defendant Silvernail observed that when he arrived at the Stefanitsises' house on the night of the robbery, little if anything in the kitchen appeared to be disturbed, the master bedroom "showed no real signs of being disturbed," and the master bedroom nightstand was undisturbed except that $400.00 cash was allegedly removed from a wallet which was left on the nightstand;

(c)  Rudy Stefanitsis reported that a necklace had been stolen from the top drawer of a bedroom dresser, without having first looked into the dresser drawer after the robbery and before he claimed that the necklace was stolen;

(d) defendant Silvernail believed that Trisha Stefanitsis was not credible: **"Note: Trisha seems to be relaying a story rather than recalling from memory"**;

(e) defendant Silvernail stated that he interviewed multiple neighbors, including a deputy sheriff who left for work during the robbery. However, none of the neighbors saw a car in the Stefanitsises' driveway or otherwise saw or heard anything unusual;

(f) neighbors residing at 344 Colony Park Drive stated that they went to bed early on the night of the robbery, but that their dog never barked that evening before the police arrived in response to the Stefanitsises' 9-1-1 call;

(g) during her interview, Trisha Stefanitsis omitted Dana Rowe from her list of individuals who had knowledge of the Stefanitsises' safe, then after prompting from defendant Silvernail, then after prompting from defendant Silvernail admitted that Dana Rowe also had knowledge of the Stefanitsis' safe, but stated "he would never do anything like that.";

(h) Trisha Stefanitsis and Rudy Stefanitsis were both incapable of producing an acceptable sketch of either robbery suspect; and

(i) defendant Silvernail's report that after the robbery, Rudy Stefanitsis confronted Dana Rowe about his possible involvement in the robbery, then subsequently told defendant Silvernail that he was certain of Dana Rowe's involvement.

43. In addition to the above, the exculpatory evidence which defendants unlawfully withheld from plaintiff includes defendant Silvernail's lengthy videotaped interviews of Trisha Stefanitsis and Rudy Stefanitsis on February 3 and February 4, 2000, shortly after the purported robbery. That interview discloses that Trisha Stefanitsis was ignorant and/or hopelessly confused about the robbers' weights, skin color, eye colors, nose shapes, and other facial features, that she never actually saw the facial features of the robber whose mask allegedly slipped down his nose during the robbery, and that she was unable to provide a satisfactory sketch of the alleged robber. Rudy Stefanitsis knew so little about the robbers' descriptions that he was unable to attempt to produce a sketch of either robber.

44. In addition, the exculpatory evidence which defendant unlawfully withheld from plaintiff includes Trisha Stefanitsis's attempted sketch of the alleged robber whose face mask purportedly slipped during the robbery. That sketch bears no plausible resemblance to plaintiff.

11

45. In addition, the exculpatory evidence which defendants withheld from disclosure to plaintiff includes the 9-1-1 call center record of the Stefanitsises' 9-1-1- call to report the alleged robbery. The Stefanitsises repeatedly stated that Trisha Stefanitsis called 9-1-1 on a cell phone from a nearby relative's house. However, their 9-1-1 call was in fact made by Rudy Stefanitsis from a pay telephone at the Pickerington YMCA.

46. The 9-1-1 call center record which defendants unlawfully withheld from disclosure also memorializes Rudy Stefanitsis's inability to describe the alleged robbers.

47. In addition to the above, the exculpatory evidence which defendants unlawfully withheld from disclosure to plaintiff and his counsel further includes Rudy Stefanitsis's recorded statement to defendant Silvernail that it **"doesn't make sense"** that plaintiff was involved in the robbery.

48. Defendant Silvernail also deliberately or recklessly recorded the false statement in his investigative summary that on February 10, 2000, when he presented a photo array to the Stefanitsises, Rudy Stefanitsis "immediately identified Ralph Blaine Smith as one of the parties who had entered the house to commit the robbery." In fact, during a recorded telephone conversation between Rudy Stefanitsis and defendant Silvernail about two weeks after Rudy Stefanitsis's purported photo array identification of plaintiff, Rudy Stefanitsis expressed his serious doubt as to whether his identification of plaintiff as one of the robbers was accurate. In response to defendant Silvernail's statement, "my understanding is that you are 100% sure that was him in the picture," Rudy Stefanitsis replied, "out of the pictures that I've seen that you had on there, he's the only one that looks like that guy there." Rudy Stefanitsis's statement that plaintiff is "the only one [in the photo array] that looks like that guy" was manifestly not an identification of plaintiff as one of the two robbers.

49. In addition to defendants' unlawful withholding of exculpatory evidence and defendant Silvernail's false investigative summary statements, defendants Silvernail and Marx further conspired to present and presented defendant Silvernail's perjured testimony to the jury at plaintiff's criminal trial in order to secure his wrongful conviction.

50. In cooperation with defendant Marx, defendant Silvernail falsely testified that Rudy Stefanitsis immediately identified plaintiff as one of the two alleged robbers during the photo array. Defendant Silvernail knew, and all defendants should reasonably have known, that that testimony was false.

51. In addition, defendants Marx and Silvernail both clearly knew that Rudy Stefanitsis was certain of Dana Rowe's involvement in the robbery (**"I guarantee it, 100%"**). Nevertheless, during plaintiff's criminal trial defendants actively cooperated to present defendant Silvernail's repeated, false testimony that no individual besides plaintiff had ever been identified as a suspect in the alleged robbery. One day after plaintiff was convicted, defendant Marx wrote to plaintiff's defense counsel, and offered assistance to plaintiff at his sentencing in exchange for plaintiff's assistance in implicating Dana Rowe in the purported Stefanitsis robbery.

**First Cause Of Action; False Arrest, Defendant Silvernail**

52. Plaintiff restates every statement set forth above.

53. At all times relevant to this motion, all defendants were acting under color of state law.

54. Defendant Silvernail, being wholly without probable cause to believe either that any crime was committed at the Stefanitsises' residence or that plaintiff committed any crime, filed a criminal complaint against plaintiff on March 8, 2000 and obtained the issuance of a warrant for plaintiff's arrest.

55. Plaintiff was then arrested and thereafter continuously imprisoned for over 21 years.

56. Pursuant to 42 U.S.C. § 1983, defendant is liable for the constitutionally violative false arrest of plaintiff.

57. As a result of defendant Silvernail's false arrest of plaintiff, plaintiff was wrongfully deprived of his liberty and privacy, suffered insult, humiliation and great mental anguish, and was wholly deprived of his ability to engage in normal life activities for over 21 years, to his damage in an amount which is as yet unknown, but which upon information and belief exceeds $20 Million.

**Second Cause Of Action- Malicious Prosecution; Defendants Marx And Silvernail**

58. Plaintiff restates every statement set forth above.

59. Defendants Silvernail and Marx, singly, jointly, severally, and in cooperation with one another, collectively agreed to violate plaintiff;s rights in order to secure his conviction for the purported Stefanitsis robbery.

60. There was at all times a complete lack of probable cause to support the criminal prosecution of plaintiff.

61. As a consequence of the legal proceedings instituted by said defendants against plaintiff, plaintiff suffered a depravation of liberty apart from his initial arrest.

62. The criminal proceedings which defendants Silvernail and Marx initiated against plaintiff were fully and finally resolved in plaintiff's favor on or about September 24, 2021, when the prosecutor's *nolle prosequi* application was granted.

63. Pursuant to 42 U.S.C. § 1983, defendants Marx and Silvernail are liable for their constitutionally violative malicious prosecution of plaintiff.

64. As a direct and proximate result of defendants' malicious prosecution of plaintiff, plaintiff suffered a complete loss of liberty for more than 21 years of his life, during which time

he suffered insult and humiliation, was deprived of his ability to engage in normal life activities, and was subjected to great mental suffering, to his damage in an amount in excess of $20 Million.

**Third Cause Of Action; Brady Violations, Defendant Marx**

65. Plaintiff restates every statement set forth above.

66. At all times material to this action defendant Marx was vested with complete control over all aspects of the Stefanitsises' home invasion robbery claim, including full authority to decide whether to prosecute plaintiff.

67. Defendant Marx also actively investigated the Stefanitsises' robbery claims, which investigation included meeting with and interrogating the Stefanitsises in their Pickerington, Ohio home before he sought plaintiff's indictment.

68. In violation of Brady v. Maryland, supra, defendant Marx, being in possession of a volume of evidence which established the absence of probable cause to support any criminal charge against plaintiff, withheld multiple items of exculpatory evidence from plaintiff and his counsel in furtherance of his efforts to secure the wrongful conviction of plaintiff for crimes which he in fact did not commit.

69. Defendant Marx's multiple acts of withholding exculpatory evidence were intentional and/or reckless, and criminal.

70. In cooperation with defendant Silvernail, defendant Marx also intentionally and/or recklessly presented perjured trial testimony to the jury during plaintiff's criminal trial, in violation of the constitutional mandate of Brady v. Maryland.

71. Defendant Marx sought and obtained plaintiff's indictment on or about March 22, 2000. As a direct consequence of defendant Marx's prosecution of plaintiff without probable cause, his

withholding of material, exculpatory evidence from disclosure to plaintiff and plaintiff's counsel, and his knowing and reckless submission of perjured evidence at plaintiff's trial, defendant Marx directly caused plaintiff to be falsely charged, wrongfully convicted and falsely imprisoned for over 21 years of his life.

72. Pursuant to 42 U.S.C. § 1983, defendant Marx is liable for his constitutionally violative withholding of exculpatory evidence and knowing use of perjured testimony.

73. As a direct and proximate result of defendant Marx's violations of plaintiff's constitutionally protected rights, plaintiff suffered insult, humiliation and great mental anguish, and was wholly deprived of his ability to engage in normal life activities for more than 21 years, to his damage in an amount which is as yet unknown, but which exceeds the sum of $20 Million.

**Fourth Cause Of Action; Concomitant And Derivative Disclosure Violations, Defendant Silvernail**

74. Plaintiff restates every statement set forth above.

75. Defendant Silvernail was vested by defendant City of Pickerington, Ohio with complete and exclusive control over the investigation of the Stefanitsises' robbery claims.

76. Upon information and belief, defendant Silvernail, being in possession of a wealth of exculpatory evidence which established the absence of probable cause to support any criminal charge against plaintiff, withheld multiple items of exculpatory evidence from defendants Marx and Fairfield County, Ohio in violation of their concomitant and derivative disclosure obligations (see Moldowan v. City of Warren, Ohio, 578 F. 3d 351 (6th Cir. 2009)), for the wrongful purpose of securing plaintiff's conviction for alleged crimes which likely never occurred, which plaintiff did not commit, and for which no probable cause existed.

77. Defendant Silvernail's withholding of exculpatory evidence was intentional and/or reckless.

16

78. In furtherance of defendant Silvernail's unlawful conduct, defendant Silvernail swore to and filed a criminal complaint against plaintiff on or about March 8, 2000.

79. In cooperation with defendant Marx, defendant Silvernail also repeatedly gave perjured testimony against plaintiff at his criminal trial.

80. As a direct and proximate result of defendant Silvernail's withholding of exculpatory evidence and perjured testimony, defendant Silvernail caused plaintiff to be criminally charged, falsely arrested, wrongfully convicted and falsely imprisoned for more than 21 years of his life.

81. Pursuant to 42 U.S.C. § 1983, defendant is liable to plaintiff for his aforesaid constitutionally violative depravations of plaintiff's rights, and all consequent damages.

82. As a direct and proximate result of defendant Silvernail's violations of plaintiff's constitutionally guaranteed rights, plaintiff suffered insult, humiliation and great mental anguish, and was wholly deprived of his ability to engage in normal life activities, to his damage in an amount greater than $20 Million.

**Fifth Cause Of Action; Conspiracy In Violation Of 42 U.S.C. § 1983 And 42 U.S.C. § 1985**

83. Plaintiff restates every statement set forth above.

84. Defendants Marx and Silvernail actively agreed and conspired with each other to deprive plaintiff, who is Black, of his substantive and procedural due process rights by, inter alia, agreeing to present and presenting the perjured criminal trial testimony of defendant Silvernail that no person other than plaintiff was ever identified as suspects in the claimed robbery of the Stefanitsises, and defendant Silvernail's further perjured testimony that on February 10, 2000, the Stefanitsises immediately and positively identified plaintiff as one of the two robbers from a photo array. Upon further information and belief, defendants' conspiracy to obtain plaintiff's

conviction by perjured testimony was wholly or partly motivated by racial or other invidious discriminatory animus.

85. As the result of defendants' aforesaid conspiracy and pursuant to 42 U.S.C. §§ 1983 and 1985, defendants are liable for their constitutionally violative conduct and plaintiff's resulting damages, in amounts greater than $20 Million.

**Sixth Cause Of Action; Wrongful Conviction, Defendants Marx and Silvernail**

86. Plaintiff restates every statement set forth above.

87. The aforesaid misconduct of defendants Marx and Silvernail led to plaintiff's wrongful conviction and imprisonment. Pursuant to 42 U.S.C. § 1983, defendants are liable for plaintiff's resulting damages in amounts in excess of $20 Million.

**Seventh Cause Of Action; False Imprisonment, Defendants Marx and Silvernail**

88. Plaintiff restates every statement set forth above.

89. By virtue of the foregoing, defendants Silvernail and Marx's constitutionally violative conduct further caused plaintiff to be falsely imprisoned for over 21 years. Pursuant to 42 U.S.C. § 1983, defendants are liable for plaintiff's resulting damages in amounts greater than $20 Million.

**Eighth Cause Of Action; Liability Of Defendant City Of Pickerington, Ohio**

90. Plaintiff restates every statement set forth above.

91. At all times material hereto it was well established law that police officers have a concomitant or derivative duty under Brady v. Maryland, supra, to turn exculpatory evidence over to the appropriate persons.

92. Defendant City of Pickerington granted to and endowed defendant Silvernail with complete and unrestricted final decision making authority with regard to all aspects of the alleged home invasion robbery of the Stefanitsises.

93. Pursuant to that conferred authority, defendant Silvernail, as defendant Pickerington's chief policymaker in the Stefanitsis case, persuaded or coerced the Stefanitsises to falsely identify plaintiff as one of the purported robbers, and testify that plaintiff was one of the purported robbers.

94. Pursuant to his complete and unrestricted authority, defendant Silvernail further filed a criminal complaint against plaintiff, withheld exculpatory evidence from defendant Fairfield County, plaintiff and plaintiff's counsel, and repeatedly gave perjured testimony against plaintiff at his criminal trial, all of which contributed to and resulted in plaintiff's conviction and imprisonment.

95. Defendant Silvernail's said violations of plaintiff's due process rights were ratified by defendant Silvernail and, upon information and belief, subsequently ratified by all other policymakers of defendant City of Pickerington.

96. Defendant City of Pickerington further maintained a policy of inadequate training, monitoring and supervision which caused the violations of plaintiff's due process rights, including but not limited to the complete lack of training of defendant Silvernail for his position of Detective, and a total or near-total lack of monitoring and supervision of defendant Silvernail's activities as a detective.

97. Upon information and belief, defendant City of Pickerington's failure to train, supervise and monitor defendant Silvernail and other similarly situated Pickerington Police Department

employees was in furtherance of defendant City of Pickerington's custom of tolerating or acquiescencing in federal civil rights violations committed by its police personnel.

98. By virtue thereof and pursuant to 42 U.S.C. § 1983, defendant City of Pickerington, Ohio is liable for the constitutionally violative false arrest, malicious prosecution, <u>Brady</u> and <u>Brady</u>-derivative violations, wrongful conviction and false imprisonment of plaintiff, to plaintiff's damage in an amount greater than $20 Million.

**Ninth Cause Of Action; Liability Of Defendant Fairfield County, Ohio**

99. Plaintiff restates every statement set forth above.

100. At all times material to this action, defendant Marx was vested with full authority to investigate the purported Stefanitsis robbery and complete decision-making authority over all aspects of the criminal prosecution of plaintiff, including the decision to prosecute plaintiff, the decision(s) to violate his obligated to disclose exculpatory evidence, and his decision(s) to present perjured testimony against plaintiff at plaintiff's criminal trial.

101. As such, defendant Marx was defendant Fairfield County, Ohio's chief policymaker with regard to all aspects of the criminal prosecution of plaintiff.

102. On behalf of defendant Fairfield County, defendants Marx and the Fairfield County Prosecutor further ratified defendant Marx's said misconduct during a lengthy series of post-trial and appellate court filings which followed plaintiff's conviction.

103. To the extent, if any, that defendant Marx's unlawful deprivations of plaintiff's constitutional rights were in any manner supervised, all of defendant Marx's said acts were subsequently further ratified by former Fairfield County Prosecutor David Landefeld, and by defendant Marx, who was the Fairfield County Prosecuting Attorney from 2011 through 2016.

20

104. Defendant Marx's above-described <u>Brady</u> violations and use of perjured testimony to secure plaintiff's wrongful conviction establishes defendant Fairfield County's deliberate indifference to plaintiff's clearly-established constitutional rights.

105. Upon information and belief, at all times material hereto, defendant Fairfield County either maintained a policy of inadequately training its assistant prosecutors to comply with the mandate of <u>Brady v. Maryland</u>, and a policy of inadequately training its assistant prosecutors to refrain from eliciting perjured testimony to secure criminal convictions, or had no discernible policies in place to educate, train and supervise its assistant prosecutors with respect to compliance with <u>Brady v. Maryland</u> and the non-use of perjured testimony to secure criminal convictions. Fairfield County's said policies were the moving force behind defendant Marx's <u>Brady</u> violations and use of perjured testimony at plaintiff's criminal trial.

106. By virtue thereof, and pursuant to 42 U.S.C. § 1983, defendant Fairfield County, Ohio is jointly and severally liable with defendant Marx for the malicious prosecution, <u>Brady</u> violations, wrongful conviction and false imprisonment of plaintiff, and for plaintiff's resulting damages in an amount in excess of $20 Million.

**<u>Tenth Cause Of Action; Costs And Attorney Fees</u>**

107. Plaintiff restates every statement set forth above.

108. Pursuant to 42 U.S.C. Section 1988, plaintiff is further entitled to recover his costs and attorney fees herein.

**Wherefore**, plaintiff Ralph Blaine Smith demands judgment against defendants David Silvernail, Gregg Marx, City of Pickerington, Ohio and Fairfield County, Ohio, jointly and

severally, in amounts each in excess of $20 Million, an award of his attorney fees herein, costs of suit, legal interest thereon, and all other available relief this Court deems equitable and just.

/s/ Joseph R. Landusky
Joseph R. Landusky (0038073)
901 South High Street
Columbus, Ohio 43206
(614) 449-0449
Fax: (614) 449-0451


/s/ John A. Yaklevich
John A. Yaklevich, Esq. (0025588)
Moore & Yaklevich
33 South Grant Avenue
Columbus, Ohio 43215
(614) 241-2156
Fax: (614) 241-5909
jayyaklevich@gmail.com


**Jury Demand**

Plaintiff demands trial by a panel of eight (8) jurors on all issues so triable herein.


/s/ Joseph R. Landusky
Joseph R. Landusky (0038073)


/s/ John A. Yaklevich
John A. Yaklevich, Esq. (0025588)
Moore & Yaklevich