# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  January 13, 2025

Mr. Daniel T. Downey
Mr. David C. Moser
Fishel, Downey, Albrecht & Riepenhoff
7775 Walton Parkway, Suite 200
New Albany, OH 43054

Mr. Aaron M. Glasgow
Mr. Ryan Spitzer
Isaac Wiles, Burkholder & Teetor
2 Miranova Place, Suite 700
Columbus, OH 43215-5098

Mr. John A. Yaklevich
Moore & Yaklevich
33 S. Grant Avenue
Columbus, OH 43215-4570

Re:  Case No. 24-3187, *Ralph Smith v. David Silvernail, et al*
Originating Case No. : 2:22-cv-00045

Dear Counsel,

The Court issued the enclosed opinion today in this case.

Enclosed are the court's unpublished opinion and judgment, entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Sincerely yours,

s/Cathryn Lovely
Opinions Deputy

cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue

NOT RECOMMENDED FOR PUBLICATION
File Name:  25a0010n.06

No. 24-3187

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

> **FILED**
>
> Jan 13, 2025
>
> KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| RALPH SMITH, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| v. | ) | THE SOUTHERN DISTRICT OF |
| | ) | OHIO |
| DAVID SILVERNAIL, et al., | ) | |
| | ) | |
| Defendants-Appellants. | ) | OPINION |
| | ) | |
| | ) | |

**Before: SILER, CLAY, and READLER, Circuit Judges.**

**CLAY, Circuit Judge.**  Plaintiff Ralph Smith was convicted in 2000 for the purported robbery of a family's home in Pickerington, Ohio.  Twenty-one years later, the emergence of exculpatory evidence prompted the state court to grant a new trial and the local prosecuting attorney to drop the case against Plaintiff.  Shortly after his release, Plaintiff filed suit under 42 U.S.C. § 1983 against the investigating detective in his case, David Silvernail ("Detective Silvernail"); the assistant prosecuting attorney, Gregg Marx ("Marx"); and their respective employers, the City of Pickerington and Fairfield County.  The district court granted Marx's motion to dismiss and later granted summary judgment in favor of the remaining defendants.  Plaintiff appeals both judgments.  For the reasons that follow, we **AFFIRM** the district court's judgment.

No. 24-3187, *Smith v. Silvernail, et al.*

# I.  BACKGROUND

## A.  Factual History

This case arises from Plaintiff's 2000 conviction for robbery, kidnapping, and theft, which was vacated twenty-one years later after Plaintiff prevailed on a motion for new trial.  Plaintiff brings this suit against various actors involved in the investigation and prosecution that led to his alleged wrongful imprisonment.

### a.  *Evidence Presented at Trial*

Plaintiff's conviction stemmed from an alleged February 2000 home invasion incident.  The victims were a Pickerington, Ohio family: Rudy Stefanitsis, Trisha Stefanitsis, and their three children.  On February 2, 2000, at around 10:30 PM, two black males entered the Stefanitsis home with weapons.  The intruders' faces were partially covered, and the Stefanitsises did not recognize either intruder.  The perpetrators allegedly then broke into the family safe and stole rare comic books and nearly $11,000 in cash.  They also stole jewelry from Rudy and Trisha's bedroom and $400 in cash from Rudy's wallet.  At several points during this home invasion, one of the intruder's masks kept slipping, briefly revealing his face to the Stefanitsises.  After ransacking the home, the intruders tied up Rudy and Trisha with electrical tape and fled the house.  Rudy and Trisha freed themselves, gathered their children, fled to the home of Rudy's brother, and later went to the Pickerington Police Department to report the incident.

In the following days and weeks, Detective Silvernail was assigned to the case and began to conduct an investigation.  That investigation focused on finding potential suspects based on Rudy and Trisha's eyewitness descriptions.  During the investigation, an acquaintance of the Stefanitsises' suggested that Plaintiff may have been involved with the incident.  Rudy told this information to Detective Silvernail, who then created a six-photograph array which contained

No. 24-3187, *Smith v. Silvernail, et al.*

photographs of Plaintiff and five other individuals.  Detective Silvernail then conducted independent verifications with Rudy and Trisha, and both identified the photo of Plaintiff as one of the intruders.  Following these verifications, Detective Silvernail interviewed Plaintiff, who denied involvement in the incident.

In August 2000, Plaintiff was tried for two counts of aggravated burglary, three counts of aggravated robbery, two counts of kidnapping, and one count of theft.  The case was prosecuted by Marx, who served as senior Assistant Prosecuting Attorney.  Plaintiff did not call any witnesses at trial and was subsequently found guilty on all charges.

### b. *Evidence Discovered After Trial*

In the years following the August 2000 convictions, new evidence slowly came to light casting doubt on Plaintiff's guilt.  One piece of evidence, which was never disclosed to Plaintiff or his counsel, concerned a search of the Stefanitsis home on the night of February 2, 2000.  Several hours after the Stefanitsises reported the home invasion to the police, two Pickerington officers arrived at the home to conduct an investigation.  One of the officers was Gregory Annis, who recorded his observations in a narrative summary.  Officer Annis' narrative summary appears to be skeptical that the home intrusion occurred exactly as the Stefanitsises described, noting: (1) there were no footprints or tire tracks outside the home even though it had just snowed; (2) the front door to the house was ajar with only "<u>slight</u> damage to the door jam [*sic*];" (3) "the house was generally unkept but did not appear to be ransacked;" and (4) "[t]he house was gone through <u>too</u> selectively for my taste" because "[t]he 'subject(s)' forcing entry into the house would have to have been familiar with the victims as well as the contents and their locations of the house."  R. 106-1, Page ID #4915.  According to Plaintiff, Marx did not provide this material to Plaintiff's trial counsel.

- 3 -

No. 24-3187, *Smith v. Silvernail, et al.*

Other potentially exculpatory evidence involving Detective Silvernail was also undisclosed. First, Detective Silvernail prepared an investigative summary, in which he detailed the investigatory steps he and the police department took. That summary reveals that the Pickerington Police Department interviewed four sets of the Stefanitsises' neighbors, none of whom had heard or seen anything suspicious or out of the ordinary that night. In fact, two of the neighbors noted that they either left or arrived at their homes during the time of alleged robbery. Second, Detective Silvernail conducted an interview with Rudy two days after the incident, in which Rudy stated: "I know for sure [an individual who is not Plaintiff] has something to do with it. I guarantee a hundred percent." *Id.* at Page ID #5042. Third, Trisha told Detective Silvernail during an interview that on the morning of the incident, Rudy had seen a black Geo Tracker vehicle with green lettering driven by two black males outside of the Stefanitsises' house. Fourth, both of the Stefanitsises provided Detective Silvernail with a list of individuals who knew about the existence of the safe containing the money and comic books. Fifth, Detective Silvernail and Rudy had a recorded telephone conversation on an unknown date in which Rudy said that "it doesn't make sense to me" that Plaintiff was the intruder. R. 106-2, Page ID #5093. Rudy repeatedly emphasized that his confusion stemmed from the fact that Plaintiff "does not know me at all," even though Rudy was "100 percent sure" that the picture of Plaintiff in the line-up matched Rudy's recollection of the intruder. *Id.* at Page ID #5093–94. Sixth, in her interview with Detective Silvernail the day after the robbery, Trisha stated that she "couldn't tell [Detective Silvernail] nothing about" the robber whose mask kept slipping. R. 106-1, Page ID #4960.

Finally, in preparing this case for prosecution, Marx met with the Stefanitsises. On March 6, 2000, Marx visited the Stefanitsises at their home and spoke with the couple regarding the events of the incident. Marx specifically wanted to determine how confident both Rudy and Trisha were

- 4 -

No. 24-3187, *Smith v. Silvernail, et al.*

in their identification of Plaintiff and questioned the couple extensively on this issue. The couple's responses convinced Marx that the Stefanitsises were credible and that Plaintiff was indeed the perpetrator; this, in turn, made Marx comfortable with charging Plaintiff.

### B. Procedural History

On June 9, 2021, after nearly twenty-one years of imprisonment, the Common Pleas Court of Fairfield County, Ohio granted Plaintiff's motion for a new trial. The government subsequently filed a motion of *nolle prosequi* and abandoned prosecution. On this basis, the Court of Common Pleas then declared Plaintiff a "wrongfully imprisoned individual."

On March 26, 2022, Plaintiff filed the operative amended complaint in the U.S. District Court for the Southern District of Ohio alleging various constitutional claims and municipal liability pursuant to 42 U.S.C. §§ 1983, 1985. Plaintiff alleged ten separate causes of action: (1) false arrest against Detective Silvernail; (2) malicious prosecution against Detective Silvernail and Marx; (3) *Brady*[1] violations against Marx; (4) concomitant and derivative disclosure violations against Detective Silvernail; (5) conspiracy to violate substantive and procedural due process rights against Detective Silvernail and Marx; (6) wrongful conviction against Detective Silvernail and Marx; (7) false imprisonment against Detective Silvernail and Marx; (8) a *Monell*[2] claim against the City of Pickerington, Ohio; (9) a *Monell* claim against Fairfield County, Ohio; and (10) costs and attorney's fees.

Fairfield County and Marx moved to dismiss the Amended Complaint. They argued that the claims against Marx were barred by the Eleventh Amendment, that Marx was entitled to absolute prosecutorial immunity, and that Plaintiff had failed to plead a viable *Monell* claim against

---

[1] *Brady v. Maryland*, 373 U.S. 83 (1963).

[2] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

No. 24-3187, *Smith v. Silvernail, et al.*

Fairfield County. The district court agreed in part with the motion, finding that Plaintiff's official capacity claims against Marx were barred by the Eleventh Amendment and the personal capacity claims were subject to absolute prosecutorial immunity. Accordingly, the district court dismissed Marx as a defendant in the litigation. Yet the court also found that Plaintiff had sufficiently pled a *Monell* violation against Fairfield County.

On October 27, 2022, Plaintiff moved for partial summary judgment, and on April 21, 2023, the remaining defendants moved for summary judgment. The district court denied Plaintiff's partial summary judgment motion and granted the remaining defendants' motions. First, the court first examined each of the claims against Detective Silvernail and found that Plaintiff had failed to present sufficient evidence for each cause of action. The court then found that because Plaintiff could not sustain any claim against Detective Silvernail, he similarly could not maintain a claim of supervisory liability against the City of Pickerington. Finally, the court granted summary judgment the on *Monell* claim against Fairfield County, finding that Plaintiff's evidentiary showings were insufficient. Plaintiff now appeals both the grant of Marx's motion to dismiss and the grant of the remaining defendants' summary judgment motions.

## II. DISCUSSION

### A. Standard of Review

Dismissals based on Federal Rule of Civil Procedure 12(b)(6) are reviewed de novo. *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015). To survive a motion to dismiss, a plaintiff must allege "facts that 'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks

No. 24-3187, *Smith v. Silvernail, et al.*

for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  In its review, "a district court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley*, 779 F.3d at 428 (citation and quotation marks omitted).

With respect to summary judgment, "[w]e review a district court order granting summary judgment under a de novo standard of review, without deference to the decision of the lower court." *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014) (citation and quotation marks omitted).  Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  "A dispute of a material fact is genuine so long as the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Kirilenko-Ison v. Bd. of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (cleaned up).  "When evaluating a motion for summary judgment, this Court views the evidence in the light most favorable to the party opposing the motion." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). "This includes drawing all justifiable inferences in the nonmoving party's favor." *Id.* (citation and quotation marks omitted).

## B.  Analysis

### 1.  Claims against Marx

The Supreme Court has long recognized that certain individuals "whose special functions or constitutional status requires complete protection from suit" are entitled to absolute immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982).  "That brand of immunity extends to government officers like prosecutors whose activities are 'intimately associated' with the judicial process."

No. 24-3187, *Smith v. Silvernail, et al.*

*Price v. Montgomery Cnty., Kentucky*, 72 F.4th 711, 719 (6th Cir. 2023) (quoting, *inter alia*, *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). This "immunity has a long reach—it extends even to unquestionably illegal or improper conduct, including instances where a defendant is genuinely wronged." *Id.* (citation and quotation marks omitted). Yet there are limits to absolute prosecutorial immunity. For example, "instances where the prosecutor's actions are not intimately associated with the judicial process," such as investigative or administrative efforts, "fall[] outside the cloak of absolute immunity." *Id*. at 719–20.

The district court granted Marx's motion to dismiss on the grounds that Marx was protected by absolute prosecutorial immunity. Plaintiff's appeal of this finding does not focus on Marx's actions immediately before and during Plaintiff's trial. This is unsurprising, given that any actions taken by Marx in his prosecution of Plaintiff, even actions such as illegally withholding *Brady* material, are undoubtedly protected by absolute immunity. *See Koubriti v. Convertino*, 593 F.3d 459, 467–68 (6th Cir. 2010). Instead, Plaintiff focuses his argument on one specific action: Marx's interview of the Stefanitsises on March 6, 2000. As the district court correctly notes: "The entirety of Plaintiff's individual capacity claim against Defendant Marx must rest solely on his contention that Marx acted as an investigator during the March 6, 2000, meeting." Mot. Dismiss Order, R. 54, Page ID #1126. Plaintiff argues that this action is not subject to absolute prosecutorial immunity because it constituted an "investigative effort to obtain an arrest warrant," which under this Circuit's precedent is not protected by absolute immunity. Appellant Br., ECF No. 41, 33 (citing, *inter alia*, *Spurlock v. Thompson*, 330 F.3d 791 (6th Cir. 2003)). Plaintiff further argues that from this evidence, "[i]t is entirely reasonable to infer" that "Marx and Silvernail met with the Stefanitsises before they initially filed charges . . . to create the appearance of probable cause by

No. 24-3187, *Smith v. Silvernail, et al.*

pressuring Rudy Stefanitsis to retract his denial that he had identified appellant during the photo array, and to instead agree to testify that he had identified appellant." *Id.* at 36.

Plaintiff's argument misses the mark. First, the conclusions Plaintiff draws from this interview are too much of a logical leap. Plaintiff contends that the occurrence of this interview leads to the reasonable inference that this meeting was specifically designed to pressure "Rudy Stefanitsis to retract his denial that he had identified appellant during the photo array, and to instead agree to testify that he had identified appellant." *Id.* But the allegations in the Amended Complaint merely state that Marx's "investigation included his March 6, 2000 in-person visit with and interview of the Stefanitsises" and that this visit "is the only known act or event which caused the Stefanitsises . . . to reverse their longstanding inability to describe either of the robbers." Am. Compl., R. 1, Page ID #77. This second purported allegation is entirely speculative. As the district court aptly noted, "Plaintiff does not provide any factual allegations about what Marx said, what questions he asked during the alleged interrogation, or how he influenced the Stefanitsises." Mot. Dismiss Order, R. 54, Page ID #1127. Thus, the district court was correct in finding that "Plaintiff relies on a speculative leap" that has little basis in the allegations of his Amended Complaint. *Id.*

Second, Plaintiff contends that this interview was investigatory in nature as it formed the basis for Plaintiff's arrest warrant. Yet as the district court correctly found, the Stefanitsises had already identified Plaintiff as one of the perpetrators weeks prior to their interview with Marx. This fact undermines Plaintiff's argument that the interview was investigatory; instead, the evidence and allegations suggest that the interview merely existed to reinforce Marx's confidence in charging Plaintiff. Plaintiff has not identified, and we are unaware of, case law in this Circuit holding that confirming a decision to charge a suspect constitutes investigatory work.

No. 24-3187, *Smith v. Silvernail, et al.*

Plaintiff argues that this case is analogous to *Harris v. Bornhorst*, 513 F.3d 503 (6th Cir. 2008). *Harris* involved a wrongfully convicted plaintiff who brought suit against a prosecutor after the prosecutor instructed local police to arrest the plaintiff. *Harris*, 513 F.3d at 508. This Court concluded that the prosecutor was not shielded by absolute immunity, as the prosecutor's direct instruction to arrest the plaintiff "without soliciting any officer's opinion" "went beyond merely advising the police." *Id.* at 510–11. That case, however, bears little relation to this case. The core of the Court's reasoning in that case was that direct instructions to police officers are not the kind of activity that is shielded by absolute immunity. *Id.* In this case, however, no such direct instructions took place, thus undermining the applicability of *Harris*.

These factors demonstrate that the district court was accurate in finding that Marx's March 2000 interview falls under the umbrella of absolute prosecutorial immunity. Accordingly, the district court did not err in dismissing all claims against Marx.

### 2. Claims Against Detective Silvernail

#### a. *False Arrest*

A false arrest claim requires the "plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citation omitted). "Probable cause is a defense to false arrest." *Webb v. United States*, 789 F.3d 647, 666 (6th Cir. 2015) (citation omitted). "For probable cause to exist for an arrest, the facts and circumstances within the officer's knowledge must be sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing or is about to commit an offense." *Weser v. Goodson*, 965 F.3d 507, 513–14 (6th Cir. 2020) (cleaned up). "An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made

No. 24-3187, *Smith v. Silvernail, et al.*

pursuant to § 1983." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. 137, 143–44 (1979)).

Detective Silvernail and the City of Pickerington argue that there is a clear basis for probable cause: the grand jury indictment. This Circuit has held that "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (citation omitted). However, this Court has also held:

> [W]here (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury), the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

*King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017).

Plaintiff was indicted by a grand jury. Yet Plaintiff argues that the indictment is not determinative of probable cause because Detective Silvernail and the Stefanitsises made false statements that compromised the grand jury's assessment. Plaintiff identifies two examples of false statements: (1) Detective Silvernail wrote an inaccurate entry in his investigative summary regarding Rudy's identification of Plaintiff during the photo array; and (2) "the Stefanitsises' purported identifications of appellant are simply incredible" because of the lack of detail and conflicting nature of their identifications. Reply Br., ECF No. 44, at 10. However, this Circuit requires a plaintiff to show specific evidence demonstrating that a "defendant has knowingly presented false testimony to the grand jury to obtain an indictment." *Gonzalez v. Kovacs*, 687 F.

No. 24-3187, *Smith v. Silvernail, et al.*

App'x 466, 469 (6th Cir. 2017) (cleaned up). In this case, Plaintiff does not identify any false evidence or testimony that was presented to the grand jury. He does not, for example, show that Detective Silvernail's purported false statements were in fact made to the grand jury.

The Court is left with no evidence to suggest that false testimony was knowingly introduced to the grand jury. Plaintiff has therefore failed to rebut the presumption that a grand jury indictment "conclusively determines the existence of probable cause." *Barnes*, 449 F.3d at 716. Detective Silvernail has thus established a complete defense to the false arrest, and the district court did not err in dismissing this claim.

### b. *Malicious Prosecution*

The second claim at issue with respect to Detective Silvernail is malicious prosecution. To prove a malicious prosecution claim, a plaintiff must show:

> (1) a criminal prosecution was initiated against the plaintiff and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (citation omitted).

The central issue of this claim mirrors the central issue of the false arrest claim: probable cause. Malicious prosecution claims "fail[] when there was probable cause to prosecute." *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007). And where a plaintiff "was indicted by a grand jury," that fact "generally serves as rebuttable proof of probable cause." *Price*, 72 F.4th at 725 (citation and quotation marks omitted). Plaintiff therefore runs into the same quandary that was fatal to his false arrest claim; namely, that he was indicted by a grand jury, which is generally demonstrative of probable cause. As explained above, Plaintiff has not shown that the grand jury indictment was

No. 24-3187, *Smith v. Silvernail, et al.*

based on knowingly false testimony. In fact, Plaintiff has not provided any evidence about the kind of material or testimony that the prosecution presented to the grand jury. Plaintiff has therefore failed to rebut the presumption that the grand jury indictment constitutes proof of probable cause, and Defendant thus has a cognizable defense to the malicious prosecution claim. Accordingly, the district court correctly found that Plaintiff cannot maintain this claim.

### c. *Concomitant and Derivative Disclosure Violations*

Under this Circuit's precedent, an investigating officer has a "*Brady*-derived responsibility to turn over potentially exculpatory evidence to the prosecutor's office." *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009) (citation and quotation marks omitted).

Plaintiff argues that Detective Silvernail committed a *Molodowan* violation by failing to disclose potentially exculpatory evidence to the prosecution. However, as the district court points out, both Detective Silvernail and Plaintiff's *own investigator* testified in their respective depositions that Detective Silvernail provided his entire investigative file to the prosecutor's office. In fact, Plaintiff's investigator testified that he reviewed the materials in the prosecutor's files and the materials in Detective Silvernail's files, and found that those materials were identical. Plaintiff attempts to rebut this by arguing (1) that "[n]o known evidence establishes which of Silvernail's investigation file documents he provided to Marx, or when those documents were provided;" and (2) even if Detective Silvernail provided all of the documents in his possession to the prosecution, "it is entirely reasonable to infer that Silvernail knew that Marx had withheld those records from appellant and appellant's counsel." Appellant Br., ECF No. 41, 54.

Each of Plaintiff's argument is unconvincing. First, it is not accurate to say that there is no evidence to establish which of the documents were provided to the prosecutor's office. Plaintiff's own investigator plainly stated that the documents contained in the prosecutor's files were the

No. 24-3187, *Smith v. Silvernail, et al.*

same as those contained in Detective Silvernail's files.  It is thus apparent that the documents handed over to the prosecution were in fact the entirety of Detective Silvernail's documents regarding the case.

Second, Plaintiff is correct that there appears to be no evidence establishing a definitive date at which Detective Silvernail turned his documents over to the prosecutor's office.  However, Plaintiff has provided no evidence to suggest that those documents were provided either after Plaintiff was charged or after Plaintiff was tried and convicted.  Instead, Plaintiff essentially asks the Court to believe, absent any evidence, that it is possible that Detective Silvernail deliberately withheld exculpatory files and only provided those files at some post-charging or post-conviction date.  Yet without any concrete evidence to support this suggestion, Plaintiff cannot maintain this argument at the summary judgment phase.  As the Supreme Court has warned, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Third and finally, Plaintiff asks the Court to make an inference and find it reasonable to suggest that Detective Silvernail knew that the prosecutor withheld *Brady* material from the defense.  Assuming, *arguendo*, that Detective Silvernail knew about the *Brady* violation, that still cannot form the basis of a cause of action.  This Court has emphasized that "the role that a police officer plays in carrying out the prosecution's *Brady* obligations is distinct from that of a prosecutor."  *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014).  Police officers meet their *Brady* obligations so "long as they inform the prosecutor about evidence that undermines the state's preferred theory of the crime." *Id.* (cleaned up).  It is not the job of the officer to disclose evidence to the defense; it is only the prosecutor "that bears the responsibility for actually disclosing exculpatory information to the defense." *Id.* (citation omitted).  Thus, even if Detective

No. 24-3187, *Smith v. Silvernail, et al.*

Silvernail knew that Marx had not disclosed *Brady* material to the defense, he was under no legal obligation to inform Plaintiff or Plaintiff's counsel.

Because Detective Silvernail turned over his entire file to the prosecution, and because each of Plaintiff's arguments fail, Plaintiff cannot maintain his concomitant and derivative disclosure claim.

### d. *Conspiracy*

Plaintiff alleges conspiracy under Section 1983,[3] alleging that Detective Silvernail and Marx conspired to deprive Plaintiff of his substantive and procedural due process rights. Conspiracy under Section 1983 requires a plaintiff to show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985).

This Circuit's case law indicates that Plaintiff's Section 1983 conspiracy is non-viable. In *Beckett v. Ford*, this Court considered a case in which a plaintiff was prosecuted and convicted for a crime that he did not commit. 384 F. App'x 435, 436–440 (6th Cir. 2010). Plaintiff then filed a Section 1983 suit, alleging, *inter alia*, that a prosecutor and a local mayor conspired to maliciously prosecute the plaintiff. *Id.* at 440. The Court affirmed the district court's grant of summary judgment on this claim, noting that the plaintiff's conspiracy claim "turns on the probable cause determination: if there was probable cause for the investigation and prosecution, then there was no *malicious* prosecution, and necessarily [the defendants] cannot have conspired to engage in one." *Id.* at 457. In an earlier portion of the *Beckett* opinion, the Court found that there was probable

---

[3] In his Amended Complaint, Plaintiff also pled conspiracy under 42 U.S.C. § 1985. However, Plaintiff states in his brief that he "is not pursuing his 1985(3) conspiracy claim in this appeal." Appellant Br., ECF No. 41, 57.

- 15 -

No. 24-3187, *Smith v. Silvernail, et al.*

cause for the investigation and prosecution because a grand jury had returned an indictment that was "fair upon its face." *Id.* Thus, the Court concluded that because there was probable cause, "there was no *malicious* prosecution, and necessarily [the defendants] cannot have conspired to engage in one." *Id.*

The analogy between *Beckett* and this case is clear. Like the plaintiff in *Beckett*, Plaintiff alleges a malicious prosecution conspiracy. Furthermore, there was probable cause to arrest and prosecute Plaintiff in this case because, as discussed earlier, a grand jury returned a fair indictment. Thus, like *Beckett*, there was no malicious prosecution in this case because there was probable cause; and because there was no malicious prosecution, Detective Silvernail and Marx could not have conspired to engage in such an illegal act. Accordingly, the district court's grant of summary judgment on this claim was not in error.

### 3. *Monell* Claim Against the City of Pickerington

Plaintiff alleges a *Monell* claim against the City of Pickerington for Detective Silvernail's role in the prosecution and investigation. The district court noted that "[a] finding of *Monell* liability against the City of Pickerington in this case would require an underlying constitutional violation by the municipality's employee." Summ. J. Order, R. 124, Page ID #6649. Yet because the district court found that "none of Plaintiff's claims against Det. Silvernail survives summary judgment," the court concluded that "Plaintiff's claims against Pickerington must also fail." *Id.*

The district court's finding was correct. As discussed above, none of the underlying constitutional claims against Detective Silvernail are viable. And this Court has found that where a court has "affirmed the district court's decision in dismissing [a plaintiff's] underlying federal claims," the court is "compelled to affirm [the district court's] decision dismissing the [*Monell*] claims against [the municipality] as well." *Henderson v. Reyda*,

- 16 -

No. 24-3187, *Smith v. Silvernail, et al.*

192 F. App'x 392, 398 (6th Cir. 2006).  Thus, the district court did not erroneously dismiss this claim.

### 4.  *Monell* **Claim Against Fairfield County**

Plaintiff alleges that Fairfield County is liable for the conduct of Marx.  Specifically, Plaintiff alleges municipal liability for Marx's malicious prosecution and false imprisonment of Plaintiff, conspiracy to fabricate and elicit perjured testimony, and *Brady* violations.  He also claims the County maintained a policy of inadequate training for its prosecutors.

### a.  *Whether Plaintiff Had Adequate Opportunity to Respond*

Plaintiff begins his argument regarding the Fairfield County claim by arguing that the district court failed to give him adequate opportunity to argue this issue.  He argues that the district court granted summary judgment "on grounds which Fairfield County never asserted in its motion."  Appellant Br., ECF No. 41, 59.  He notes that the district court analyzed the various grounds the *Monell* claim was predicated under (e.g., Marx's alleged malicious prosecution and false imprisonment), but that those grounds were never referenced in Fairfield County's motion. (*Id.*).  According to Plaintiff, this violated Federal Rule of Civil Procedure 56(f)(2), which allows a court to grant a summary judgment motion "on grounds not raised by a party" only after the court has given the non-moving party "notice and reasonable time to respond."

Plaintiff's argument is misplaced.  In its motion for summary judgment, Fairfield County explicitly argued that Plaintiff could not maintain his *Monell* claim because there was no underlying constitutional injury.  The district court's analysis subsequently analyzed each of the underlying constitutional violations alleged by Plaintiff and found that none of them could form the basis of a *Monell* claim.  True, the district court did not adopt the exact reasoning in Fairfield County's brief in finding that the underlying constitutional violations were nonviable.  Yet Plaintiff

- 17 -

No. 24-3187, *Smith v. Silvernail, et al.*

has not identified, and we are unaware of, case law holding that a court may not adopt reasoning different from a movant's arguments without first providing notice to the nonmoving party.  In fact, the standard under Rule 56(f)(2) is much lower.  This Court has found that where party explicitly seeks summary judgment on each of the claims in a complaint, that alone is sufficient notice for Rule 56(f)(2) purposes.  *Bailey v. City of Howell*, 643 Fed. App'x 589, 600 (6th Cir. 2016).  The district court did not therefore commit a Rule 56(f)(2) notice error.

### b. *Underlying Constitutional Violations*

This Court has held that "[t]here can be no liability under *Monell* without an underlying constitutional violation."  *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014).  The first portion of the district court's *Monell* analysis focused on this requirement, as the court examined whether there was in fact a cognizable underlying constitutional violation.

The district court first found that malicious prosecution and false imprisonment could not serve as the underlying constitutional violations because the court had already established that there was probable cause for the arrest and prosecution.  This finding was without error.  As explained earlier, there was probable cause for Plaintiff's arrest and prosecution because the grand jury issued a valid indictment.  Considering this is a complete defense to malicious prosecution and false imprisonment, *see Bickerstaff v. Lucarelli*, 830 F.3d 388, 397 (6th Cir. 2016), malicious prosecution and false arrest cannot serve as the underlying constitutional violation.

The district court also found that conspiracy could not form the underlying constitutional violation because Plaintiff had presented no evidence of an illicit agreement between Marx and Detective Silvernail.  The district court was correct in this assessment.  As explained above, Plaintiff has failed to establish a conspiracy between Marx and Detective Silvernail.  This therefore cannot serve as the underlying constitutional violation.

No. 24-3187, *Smith v. Silvernail, et al.*

The district court did, however, conclude that a *Brady* violation could serve as the underlying constitutional violation.  The court noted that a state court had already found that there was a *Brady* violation in this case; thus, under the principle of collateral estoppel, the state court's determination had preclusive effect on this case.  Perplexingly, Plaintiff appears to challenge this finding.  Plaintiff provides a list of evidence that, according to him, demonstrates that there was in fact a *Brady* violation in this case.  But the district court's finding was in *Plaintiff's favor*, and he seems to misconstrue the district court's holding as adverse to him.  It is only Fairfield County that has standing to challenge this finding, which it does not do.  The district court therefore did not err in finding that the *Brady* violation may serve as the underlying constitutional violation.

### c.  *Liability Under* Monell

The district court next examined the different means by which *Monell* liability could be established.  To hold a municipality liable under *Monell*, a plaintiff must show that the municipality's employees committed constitutional violations and "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690.  This Circuit has recognized four general ways in which a plaintiff can show *Monell* liability: "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citation omitted).

Plaintiff's brief focuses only on the second of the means outlined by *Burgess*: a final decision-maker ratified the illegal conduct.  According to Plaintiff, Marx both committed the *Brady* violation and had final decision-making authority in the prosecutor's office.  Plaintiff points

No. 24-3187, *Smith v. Silvernail, et al.*

to Marx's deposition testimony, in which Marx stated that "[o]ther than the jury and the court of appeals and the common pleas court, I was the chief decision-maker in the office." Marx Dep., R. 85, Page ID #1453. Marx also stated in his deposition that he did not need Fairfield County Prosecuting Attorney David Landefeld's approval to bring the case against Plaintiff, did not discuss the case with Prosecutor Landefeld, and that Prosecutor Landefeld did not have "any issue with [Marx's] handling of the case." *Id.* at Page ID #1452–53. Finally, after Marx became the Fairfield County Prosecuting Attorney in 2011, Defendant argues that Marx "ratified his own year-2000 conduct by opposing [Plaintiff's] post-trial efforts to obtain a new trial." Appellant Br., ECF No. 41, 67. Each of these factors, according to Plaintiff, demonstrate that Marx was the final decision-maker with respect to the underlying constitutional violation.

Plaintiff's argument is unpersuasive. The Supreme Court has clarified that "[t]he fact that a particular official—even a policymaking official—has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481–82 (1986). Instead, the official must "be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id.* at 483. *Pembaur* clarifies that there are two means by which an individual can be granted authority to make municipal policy: via legislative enactment or delegation "by an official who possesses such authority." *Id.* In this case, Plaintiff has shown no evidence demonstrating that Marx had the kind of authority described in *Pembaur*. Nowhere does Plaintiff suggest that at the time of the underlying constitutional violation, Marx had final policymaking authority either through statutory authority or the permissible delegation of authority. At most, Plaintiff provides evidence that Marx had a large degree of freedom to

No. 24-3187, *Smith v. Silvernail, et al.*

prosecute cases; but as the Supreme Court has warned, "discretion in the exercise of particular functions" is not the equivalent of final policymaking authority. *Id.* at 482.

*Blunt v. City of Roseville* is instructive. No. 24-1136, 2024 WL 4543319 (6th Cir. Oct. 22, 2024). In that case, a plaintiff brought a *Monell* claim against a county for a malicious prosecution by one of the county's assistant prosecuting attorneys. *Id*. at *1. The plaintiff argued that the assistant prosecuting attorney had final policymaking authority, as the assistant was given large leeway in prosecuting his cases. *Id.* at *2. The Court rejected this argument. First, the Court found that the plaintiff had failed to point to any state law vesting "assistant prosecuting attorneys with authority to make final policy for the County." *Id.* Second, the Court determined that the plaintiff's argument "conflate[d] the exercise of prosecutorial discretion in making the charging decision with a delegation of authority to make final policy for the County." *Id.* The plaintiff had not provided any evidence showing "why the assistant prosecutor's decision to charge her was based on policy—rather than (as in the usual case) the prosecutor's understanding of the relevant circumstances and law." *Id.* Such is the case here. Plaintiff has not identified any Ohio statute that vests policymaking authority in assistant prosecutors such as Marx. In fact, Ohio law states that final decision-making authority is vested in the county prosecuting attorneys, and that assistant county prosecuting attorneys merely serve at the pleasure of the prosecuting attorney. *See* Ohio Rev. Code §§ 309.06, 309.08, 309.09. Furthermore, Plaintiff has in no way indicated how Marx's prosecution was connected to policy rather than Marx's "understanding of the relevant circumstances and law." *Blunt*, 2024 WL 4543319, at *2.

Finally, Plaintiff's invocation of Marx's 2011 ascension to the office of Fairfield County Prosecuting Attorney is irrelevant to the issue at hand. The *Monell* claim is based on the alleged violations that occurred during Plaintiff's 2000 prosecution. What office Marx attained some

- 21 -

No. 24-3187, *Smith v. Silvernail, et al.*

eleven years later, and the decisions he made once in office, bear no connection to the actions he took in the 2000 prosecution.  As the district court wisely observed, a municipality can only be held liable under *Monell* if the municipality's actions are "the *moving force* behind the violation." Summ. J. Order, R. 124, Page ID #6656 (citing *Monell*, 436 U.S. at 694).  Thus, "Marx's later conduct as County Prosecutor cannot have been the moving force behind his Brady violations in 2000." *Id.*

In summary, Plaintiff's *Monell* claim was properly dismissed at summary judgment. Plaintiff has failed to show that the *Brady* violation was ratified by the final decision-making authority in the Fairfield County Prosecuting Attorney's office.  Instead, the *Brady* violation was committed and ratified only by Marx, who did not hold final authority.

## III.  CONCLUSION

The district court's determination to grant Marx's motion to dismiss and grant summary judgment in favor of the remaining defendants was without error.  Thus, for the reasons set forth above, this Court **AFFIRMS** the judgment of the district court.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 24-3187

RALPH BLAINE SMITH,

    Plaintiff - Appellant,

    v.

DAVID SILVERNAIL, et al.,

    Defendants - Appellees.

```
┌──────────────────────────────────┐
│                                  │
│             FILED                │
│          Jan 13, 2025            │
│     KELLY L. STEPHENS, Clerk     │
│                                  │
└──────────────────────────────────┘
```

Before:  SILER, CLAY, and READLER, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_Kelly L. Stephens_
_____
Kelly L. Stephens, Clerk